**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GERALD LEE MILLER, JR., Plaintiff, v. JEU MOON, et al., Defendants. | No. 2:25-CV-2694-DC-DMC-P<br><br>ORDER |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's original complaint, ECF No. 1.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). This provision also applies if the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody. See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2).

/ / /

/ / /

Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants: (1) Jeu Moon, M.D.; (2) Nathaniel Matolo, M.D.; (3) S. Keenan, R.N.; (4) D. Behrman, the Chief Medical Executive at California State Prison – Folsom (Folsom); (5) San Juaquin General Hospital (SJGH); (6) Johnson, a correctional officer at Folsom; (7) Van Weggen, a correctional officer at Folsom; and (8) Lofton, a correctional officer at Folsom. See ECF No. 1, pgs. 1-7.

Plaintiff states that he was diagnosed with a ventral umbilical hernia on February 2, 2024, and that he was scheduled for surgery at SJGH. See id. at 7. Surgery was performed on August 21, 2024, by Defendant Matolo. See id. Plaintiff states that, immediately after surgery, he was transported back to Folsom and that, while riding in the transport van in an upright position, his sutures may have torn open. See id. Plaintiff states that he was not provided any pain medication and experienced pain during the transport. See id. Upon arrival back at Folsom, Plaintiff received a post-surgery examination during which he complained of the pain and discomfort he experienced during transport. See id.

/ / /

/ / /

/ / /

The following day – August 22, 2024 – Plaintiff complained that he had been denied pain medication for the pain he was suffering following surgery and transport back to Folsom. See id. at 8. Later that day Plaintiff was seen again for a second post-surgery follow-up. See id. Plaintiff was seen by a prison nurse to whom Plaintiff complained of continuing pain in the area of the surgery as well as bleeding. See id. The nurse ordered antibiotics and Tylenol and referred Plaintiff to be seen by Defendant Moon. See id.

Plaintiff alleges that his condition became worse between August 22 and September 5, 2024. See id. According to Plaintiff, the nurse ordered an additional course of antibiotics on September 5, 2024. See id. Plaintiff was examined by Defendant Moon the following day via telemedicine. See id. During the examination, Defendant Moon confirmed that Plaintiff was experiencing discharge from the surgical area and continued Plaintiff on antibiotics. See id. at 8-9.

Plaintiff was transported back to SJGH on September 20, 2024, for examination by Defendant Matolo. See id. at 9. At the examination Plaintiff continued to complain of severe pain in the surgical area. See id. According to Plaintiff, Defendant Matolo acknowledged the area was swollen, infected, and not healing properly. See id. Plaintiff states that Defendant Matolo treated the area by applying dry dressing. See id. Plaintiff was not provided with any pain medication. See id. At the end of the examination, Defendant Matolo recommended that Plaintiff continue with the antibiotics and have the surgical area changed daily with dry dressing. See id.

Plaintiff was examined on September 21, 2024, by Defendant Moon upon Plaintiff's return to Folsom after the follow-up with Defendant Matolo at SJGH the previous day. See id. Plaintiff again complained of pain, which he states was increasing. See id. According to Plaintiff, Defendant Moon never inquired as to the level of Plaintiff's pain. See id.

Plaintiff next saw Defendant Moon on September 24, 2024, for another follow-up. See id. at 10. Plaintiff states that, despite worsening pain and evidence of infection shown by a discharge of thick greenish fluid, Defendant Moon failed to provide any medication for Plaintiff's pain. See id. Plaintiff adds that Defendant Moon told Plaintiff there was nothing wrong with him

and that there was nothing more he (Moon) could do. See id.

Plaintiff states that he was seen by a prison nurse on October 7, 2024, at which time he continued to have visible areas which were infected. See id.

On October 16, 2024, Plaintiff underwent a CT scan at a mobile facility at Folsom to determine the source of complication following surgery. See id. According to Plaintiff, the procedure was unsuccessful due to the scanning nurse's inability to administer an IV contrast. See id. at 10-11. Plaintiff states that the procedure was rescheduled for a later date at SJGH. See id. at 11. Plaintiff was seen again by Defendant Moon later that same day. See id. According to Plaintiff, despite Plaintiff's complaints of pain and spitting up blood, Defendant Moon simply told Plaintiff he would be fine and not to worry. See id. Plaintiff states that Defendant Moon did not provide any pain medication or otherwise treat the infected surgical area. See id.

Plaintiff next states that he was seen again on October 18, 2024, by Defendant Matolo at SJGH. See id. At this examination, Plaintiff complained of increasing levels of pain and told Defendant Matolo that he had developed an infection around the surgical area. See id. According to Plaintiff, Defendant Matolo told Plaintiff he would be fine and not to worry. See id. Plaintiff states that moments later Defendant Matolo told Plaintiff he would no longer be able to treat him. See id. Plaintiff adds that Defendant Matolo informed Plaintiff that he had been directed by Defendant Moon at Folsom to discontinue treatment and to not conduct any further diagnostic testing because "being sick was a part of the punishment for coming to prison." Id. at 12. Plaintiff states that Defendant Moon instructed Defendant Matolo to return Plaintiff to Folsom. See id.

Plaintiff alleges that he submitted a health care grievance against Defendants Moon, Matolo, and SJGH on October 26, 2024. See id. at 14-15.

Plaintiff states that he was next interviewed by Defendant Moon on November 18, 2024, following Plaintiff's filing of health care services request due to stomach pain. See id. at 12. According to Plaintiff, Defendant Moon told him at this interview that he was unable to provide any additional treatment. See id. Plaintiff adds that Defendant Moon denied Plaintiff's request to renew pain medication even though the surgical area was visibly swollen and

discolored. See id.

Plaintiff submitted another health care services request on December 2, 2024, for stomach pain and infection. See id. Plaintiff was seen by Defendant Moon the following day. See id. at 13. Plaintiff again complained of continued pain since the surgery months prior. See id. According to Plaintiff, Defendant Moon did not approve Plaintiff's request to be sent back to SJGH and instead ordered oral treatment with Bactrim 800 mg to address infection. See id. Plaintiff states that Defendant Moon did not order any blood tests or other services to address the cause of Plaintiff's stomach pain. See id.

Plaintiff was seen again by Defendant Moon on January 15, 2025, at which time Defendant Moon directly observed the surgical area and source of infection, pain, and skin discoloration. See id. Plaintiff states that, nonetheless, Defendant Moon did not provide any follow-up treatment or additional referrals. See id. Plaintiff also alleges that Defendant Moon did not provide any pain medication. See id.

Plaintiff next states that the CT scan which had been rescheduled from October 16, 2024, was conducted on either March 14, 2025, or May 2, 2025 – the allegations are inconsistent in this regard. See id. Following this CT scan, Plaintiff was seen on May 9, 2025, by his new primary care provider at Folsom, Dr. Reddy. See id. According to Plaintiff, the CT scan showed a large anterior abdominal wall defect, and he was informed by Dr. Reddy that additional surgery would be needed. See id. Plaintiff states that he was transported back to SJGH on June 12, 2025, for additional examination. See id. at 14.

Plaintiff claims that, following submission of his health care grievance on October 26, 2024, he experienced longer delays between medical visits which resulted in additional problems such as bladder leakages and inability to gain weight. See id. at 15. Plaintiff again states that he was told by Defendant Matolo that Defendant Moon had instructed that Plaintiff not be provided any additional treatment at the hospital and not to run any further diagnostic tests because being sick was part of the punishment of being in prison. See id. Plaintiff suggests that this was due to prior litigation initiated by Plaintiff concerning his health care. See id.

/ / /

Next, Plaintiff generally alleges that it is a custom and practice at Folsom "to lie, destroy medical records, cover up medical issues in order to deny medical treatment." Id. at 16. Plaintiff adds that officials will switch medical files with other inmates and use "all kinds of underhanded tricks" to deny or delay medical treatment. Id.

Next, Plaintiff claims that during his efforts to pursue administrative grievances regarding the health care issues outlined above, Defendants Lofton, Van Weggen, and Johnson took adverse action against him by falsifying rules violation reports in order to subject Plaintiff to unwarranted disciplinary sanctions. See id. at 16-17. Plaintiff adds that false evidence was presented during the disciplinary hearing to support the version of events put forward by Defendant Lofton, Van Weggen, and Johnson. See id.

According to Plaintiff, he was attempting to attend a self-help group on August 15, 2024, when he was stopped by Defendant Lofton who asked to see Plaintiff's identification card, which Plaintiff provided. See id. at 17. Plaintiff states that he was then instructed by Defendant Lofton to remain where he was because Plaintiff was being disrespectful by filing a 602 [inmate grievance]. See id. Plaintiff claims that Defendant Lofton then activated an alarm and he was placed in handcuffs by responding custody staff, escorted to the custody complex, strip searched, and detained for two hours based on an incident fabricated by Defendant Lofton. See id. Plaintiff states that Defendant Lofton issued a false rules violation report alleging Plaintiff had engaged in disrespect to staff with a potential for violence. See id. Ultimately, Plaintiff was found not guilty of the charged rules violation following a hearing on September 18, 2024. See id. at 18.

On September 25, 2024, Plaintiff submitted an inmate appeal requesting removal of all information within his file in connection with the inmate grievance. See id. at 18. Plaintiff additionally requested that Defendant Van Weggen refrain from committing acts of retaliation stemming from the incident with Defendant Lofton. See id. This appeal was denied. See id. Plaintiff refiled his appeal, which was transferred to a reviewing agency. See id. Plaintiff was interviewed by the agency and described Defendant Van Weggen's alleged "retaliatory" behavior as preventing Plaintiff from attending his college courses between September 22, 2024, to October 17, 2024. See id. at 19.

On October 26, 2024, Plaintiff filed an inmate appeal alleging Defendant Moon was "deliberately indifferent" to his complaints of pain and medical needs associated with the umbilical hernia surgery. See id. at 20. On January 7, 2025, Plaintiff's appeal was denied without addressing his medical issues or pain. See id. at 21. On January 13, 2025, Plaintiff resubmitted an inmate appeal to the California Correctional Health Care Services Division, which was denied. See id. Plaintiff asserts he was deprived of his eighth amendment rights by being subjected to "unnecessary and wanton infliction of pain, including psychological and emotional distress" which has caused interference with his daily activities. See id.

Plaintiff asserts that he has complied with the California Tort Claim Act and further asserts negligence under California Civil Code § 1714 against Defendants Matolo, Moon, Keenan, Behrman, and SJGH. See id. at 22.

Next, Plaintiff alleges that on February 20, 2025, Defendant Johnson filed a false mental health referral report in retaliation to Plaintiff's use of the administrative appeals process. See id. at 19. Plaintiff asserts this report was to be used against him at his next parole board hearing. See id. Plaintiff states the report included false statements indicating Plaintiff engaged in irregular behavior and talked during mandatory standing count. See id. Plaintiff alleges that Defendant Johnson falsely used her coworker, Correctional Officer A. Rupert, as a reporting officer to corroborate her claim. See id. Plaintiff asserts that when asked, Rupert denied writing the report. See id. Plaintiff alleges that he overheard Defendant Johnson and Rupert discussing how Defendant Johson hates "inmates who file inmate appeals." Id.

Next, Plaintiff alleges that his rights within his Federal Civil Settlement regarding medical claims were violated, causing him harm when the Second District Court of Appeal used Plaintiff, his prior court orders, and prior case files for training of new officers at Folsom State Prison. See id. at 28-29.

/ / /

/ / /

/ / /

/ / /

Plaintiff claims a violation of his Fifth, Sixth, and Fourteenth Amendment rights and asserts the Second District Court of Appeal acted "arbitrarily and capriciously" when it denied a hearing on his resentencing after Plaintiff was resentenced on September 5, in either 2023 or 2024.[1] See id. at 28. Plaintiff alleges he was deprived of his liberty when the Second District Court of Appeal attempted to remove facts of his resentencing from the record, forcing him to "relitigate an issue that was already granted…" Id.

On October 4, 2025, upon Plaintiff attempting to litigate full resentencing, Plaintiff asserts the court made an error when it stated he had resentencing to remove prior prison time from his sentence. See id. at 29. Plaintiff filed an appeal with the California Supreme Court which denied review. See id.

Next, Plaintiff alleges issues with state and federal court jurisdiction regarding his sentencing and "receivership." See id. at 30. Plaintiff asserts the Second District Court of Appeal has "illegally refuse[d]" to acknowledge his resentencing, which has violated plaintiff's due process rights. See id.

## II. DISCUSSION

The Court finds that Plaintiff has stated the following cognizable federal claims under 42 U.S.C. § 1983:

> (1) an Eighth Amendment medical deliberate indifference claim against Defendant Moon arising from Plaintiff's follow-up visit on September 24, 2024, at which time Defendant Moon allegedly failed to provide any medication for Plaintiff's pain despite numerous complaints of pain and that Defendant Moon told Plaintiff nothing was wrong.
>
> (2) an Eighth Amendment medical deliberate indifference claim against Defendant Moon arising from Plaintiff's follow-up visit on October 16, 2024, at which time Defendant Moon told Plaintiff not to worry about anything despite worsening pain and spitting up blood.
>
> (3) an Eighth Amendment medical deliberate indifference claim based on Plaintiff's allegation that Defendant Moon instructed Defendant Matolo to discontinue Plaintiff's treatment.

[1] It is unclear which year the sentencing took place as Plaintiff uses both dates.

(4) an Eighth Amendment medical deliberate indifference claim against Defendant Moon arising from Plaintiff's follow-up visit on November 18, 2024, at which time Plaintiff informed Defendant Moon of stomach pain follow surgery and Defendant Moon allegedly told Plaintiff there was nothing more he could do.

(5) an Eighth Amendment medical deliberate indifference claim against Defendant Moon arising from a follow-up visit on January 15, 2025, at which time Defendant moon observed infection at the surgical site and skin discoloration but provided no treatment.

(6) a First Amendment retaliation claim against Defendant Moon arising from Plaintiff's allegation that Defendant Moon instructed Defendant Matolo not to provide additional treatment due to Plaintiff's prior litigation.

(7) a First Amendment retaliation claim against Defendant Lofton based on Plaintiff's allegation that Defendant Lofton issued a false rules violation report on August 15, 2024, because Plaintiff had been disrespectful by filing inmate grievances.

(8) a First Amendment retaliation claim against Defendant Johnson.

Plaintiff has not, however, stated cognizable claims against the remaining defendants. As to Defendant Matolo, the physician at SJGH who performed surgery on Plaintiff, Plaintiff has not alleged facts to show that Defendant Matolo was deliberately indifferent.[2] To the extent Plaintiff alleges denial of adequate medical care related to sutures reopening on the van ride back from the hospital following surgery, Plaintiff has not linked such a claim to any named defendant who alleged failed to provide medical care. Similarly, to the extent Plaintiff asserts a denial of adequate medical care at the August 22, 2024, follow-up visit at the prison, Plaintiff has not indicated who he saw at that time or otherwise linked the clam to a named defendant. Plaintiff also alleges that Defendant Moon examined Plaintiff on September 6, 2024, at a telemedicine appointment at which time Defendant Moon confirmed that Plaintiff was experiencing discharge from the surgical area and continued Plaintiff on antibiotics. This allegation fails to state a claim under § 1983 because the facts indicate that Plaintiff was provided treatment by Defendant Moon.[3] Plaintiff also alleges that he was seen by Defendant Matolo at

---

[2] Plaintiff's allegations of professional negligence against Defendant Matolo are cognizable as a state law claim over which this Court may exercise supplemental jurisdiction.

[3] Again, this claim may state a claim for professional negligence.

SJGH on September 20, 2024, for a follow-up examination at which time Defendant Matolo conducted an examination, applied dressing, and continued Plaintiff on antibiotics. These allegations fail to state a claim because the facts alleged show that Plaintiff was provided treatment and Plaintiff does not allege such treatment was substandard. Plaintiff alleges that Defendants Lofton, Van Weggen, and Johnson retaliated against him by falsifying rules violations reports. This claim is deficient because Plaintiff does not allege that these defendants were aware of Plaintiff's protected activity or that such activity motivated the allegedly retaliatory actions. Finally, though Plaintiff outlines a series of facts relating to some sort of actions in in the state courts, these allegations are not linked to any named defendant.

Plaintiff will be provided an opportunity to amend consistent with the following legal principles relating to establishing a causal link, medical care, and retaliation.

**A. Causal Link**

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

**B. Medical Care**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts

of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical

treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not generally give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). However, a claim involving alternate courses of treatment may succeed where the plaintiff shows: (1) the chosen course of treatment was medically unacceptable under the circumstances; and (2) the alternative treatment was chosen in conscious disregard of an excessive risk to the prisoner's health. See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).

**C. Retaliation**

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the plaintiff must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

/ / /

## III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

Accordingly, IT IS HEREBY ORDERED that Plaintiff may file an amended complaint within 30 days of the date of service of this order.

Dated: July 20, 2026

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE